☑ Original      ☐ Duplicate Original

# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>information associated with certain accounts that are stored at premises owned, maintained, controlled, or operated by Google, LLC ("Google"), an electronic communications service and/or remote computing service provider headquartered at 1600 Amphitheatre Parkway, Mountain View, California. | )<br>)<br>)<br>)<br>)<br>)<br>)    Case No. 23-1833M(NJ) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the    Eastern    District of    Wisconsin
*(identify the person or describe the property to be searched and give its location)*:

Please see Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

Please see Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before 11/6/2023      *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.      xx☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to    Honorable Nancy Joseph   .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*    ☐ until, the facts justifying, the later specific date of _____.

Date and time issued: 10/23/2023 @ 10:58 a.m.
a.m.

*Judge's signature*

City and state:    Milwaukee, WI      Honorable Nancy Joseph, U.S. Magistrate Judge
*Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

       I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with the following accounts, which are stored at premises owned, maintained, controlled, or operated by Google, LLC, a company headquartered at 1600 Amphitheatre Parkway, Mountain View, CA 94043:

1. **Jeasly@unlimitedtaxestx.com**

2. **Jsimon@unlimitedtaxestx.com**

3. **Jahnelleasly01@gmail.com**

4. **Simonjasmeika@gmail.com**

## ATTACHMENT B

### Particular Things to be Seized

**I.**     **Information to be disclosed by Google, LLC ("Google")**

To the extent that the information described in Attachment A is within the possession, custody, or control of Google, regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Google, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Google is required to disclose the following information to the government for each account or identifier listed in Attachment A **for the time period of January 1, 2022, through the date of this warrant.**

        a.      The contents of all emails associated with the accounts, including stored or preserved copies of emails sent to and from the account, draft emails, and deleted emails; attachments; the source and destination addresses associated with each email, the size, length, and timestamp of each email; and true and accurate header information including the actual IP addresses of the sender and recipients of the emails;

        b.      All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative email addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

        c.      The types of service utilized;

d.      Any records pertaining to the user's contacts, including: address books; contact lists; social network links; groups, including Google Groups to which the user belongs or communicates with; user settings; and all associated logs and change history;

e.      Any records pertaining to the user's calendar(s), including: Google Calendar events; Google Tasks; reminders; appointments; invites; and goals; the sender and recipients of any event invitation, reminder, appointment, or task; user settings; and all associated logs and change history;

f.      The contents of all text, audio, and video messages associated with the account, including Chat, Duo, Hangouts, Meet, and Messages (including SMS, MMS, and RCS), in any format and however initially transmitted, including, but not limited to: stored, deleted, and draft messages, including attachments and links; the source and destination addresses associated with each communication, including IP addresses; the size, length, and timestamp of each communication; user settings; and all associated logs, including access logs and change history;

g.      The contents of all records associated with the account in Google Drive (including Docs, Sheets, Forms, and Slides) and Google Keep, including: files, folders, media, notes and note titles, lists, and other data uploaded, created, stored, or shared with the account including drafts and deleted records; SMS data and device backups; the creation and change history of each record; accounts with access to or which previously accessed each record; any location, device, other Google service (such as Google Classroom or Google Group), or third-party application associated with each record; and all associated logs, including access logs and IP addresses, of each record;

33

h.      The contents of all media associated with the account in Google Photos, including: photos, GIFs, videos, animations, collages, icons, or other data uploaded, created, stored, or shared with the account, including drafts and deleted records; accounts with access to or which previously accessed each record; any location, device, or third-party application data associated with each record; and all associated logs of each record, including the creation and change history, access logs, and IP addresses;

i.      All Location History and Web & App Activity indicating the location at which the account was active, including the source of the data, date and time, latitude and longitude, estimated accuracy, device and platform, inferences drawn from sensor data (such as whether a user was at rest, walking, biking, or in a car), and associated logs and user settings, including Timeline access logs and change and deletion history;

j.      All Google Voice records associated with the account, including: forwarding and other associated telephone numbers, connection records; call detail records; SMS and MMS messages, including draft and deleted messages; voicemails, including deleted voicemails; user settings; and all associated logs, including access logs, IP addresses, location data, timestamps, and change history;

k.      All Internet search and browsing history, and application usage history, including Web & App Activity, Voice & Audio History, Google Assistant, and Google Home, including: search queries and clicks, including transcribed or recorded voice queries and Google Assistant responses; browsing history, including application usage; bookmarks; passwords; autofill information; alerts, subscriptions, and other automated searches, including associated notifications and creation dates; user settings; and all associated logs and change history.

34

l. All records pertaining to communications between the Provider and any person regarding the account, including contacts with support services and records of actions taken; and

m. For all information required to be disclosed pursuant to this warrant, the physical location or locations where the information is stored.

The Provider is hereby ordered to disclose the above information to the government within 14 days of the issuance of the warrant.

## II. Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of Title 26, United States Code, Section 7206(1) (filing false tax returns) and Section 7206 (2) (aiding or assisting in the filing of false or fraudulent returns), as well as Title 18, United States Code, Section 287 (false claims) involving **JAHNELL EASLY and/or JASMEIKA SIMON since January 1, 2022, to the present,** including, for each email account identified in Attachment A, information pertaining to the following matters:

1. The creation, preparation, and filing of tax returns, including all preparatory steps and communications.

2. Information provided by clients and potential clients concerning tax returns.

3. Records and information pertaining to taxes, refunds, and W-2s.

4. Advertisements and/or solicitation of tax clients.

5. Personal identifiable information of taxpayers, including names, date of birth, social security numbers, and driver's licenses.

6. Proceeds and/or payments pertaining to the Subject Offenses.

35

7. Financial records, including account information, bank statements, checks, money orders, cash, ATMs, withdrawals, deposits, transfers (including wire, ACH transfers).

8. All evidence of who created, used, owned or controlled the email accounts, including, records that help reveal the identity and whereabouts of such person(s).

9. Evidence indicating how and when the email accounts were accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crimes under investigation and to the email account owners.

10. Evidence indicating the email account owners' state of mind as it relates to the crime under investigation.

11. The identity of the person(s) who communicated with the email accounts about matters relating to the above-mentioned violations, including records that help reveal their whereabouts.

This warrant authorizes a review of electronically stored information, communications, other records, and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, IRS-CI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

36

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br><br>information associated with certain accounts that are stored at premises<br>owned, maintained, controlled, or operated by Google, LLC ("Google"), an<br>electronic communications service and/or remote computing service provider<br>headquartered at 1600 Amphitheatre Parkway, Mountain View, California. | )<br>)<br>)<br>)<br>)<br>)<br>)     Case No.23-1833M(NJ) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Please see Attachment A.

located in the _____ Eastern _____ District of _____ Wisconsin _____, there is now concealed *(identify the person or describe the property to be seized)*:

Please see Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 26 U.S.C. § 7206(1) | Filing False Tax Returns |
| 26 U.S.C. § 7206 (2) | Aiding or Assisting in the Filing of False or Fraudulent Returns |
| 18 U.S.C. § 287 | False Claims |

The application is based on these facts:

Please see Affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Zachary E. Stegenga*     Digitally signed by Zachary E. Stegenga
Date: 2023.10.19 16:50:26 -05'00'

*Applicant's signature*

Zachary E. Stegenga, Special Agent, IRS-CI

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____ TELEPHONE _____ *(specify reliable electronic means)*.

Date:10/23/2023

*Judge's signature*

City and state:   Milwaukee, WI     Honorable Nancy Joseph, U.S. Magistrate Judge

*Printed name and title*

## AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT

I, Zachary E. Stegenga, being first duly sworn, hereby depose and state as follows:

### BACKGROUND AND EXPERIENCE OF AFFIANT

1.     I make this affidavit in support of an application for a search warrant for information associated with certain accounts that are stored at premises owned, maintained, controlled, or operated by Google, LLC ("Google"), an electronic communications service and/or remote computing service provider headquartered at 1600 Amphitheatre Parkway, Mountain View, California.  The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Google to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

2.     I am a Special Agent with the Internal Revenue Service, Criminal Investigation ("IRS-CI") and have been since October 2008.  Through my training and experience I have learned, among other things, financial investigative techniques used to carry out my responsibilities of conducting criminal investigations relating to violations of the Internal Revenue Code (Title 26, United States Code), the Money Laundering Control Act (Title 18, United States Code), the Bank Secrecy Act (Title 31, United States Code), and other related offenses.  I have conducted numerous investigations involving violations of these federal laws.  I have been the affiant on numerous search warrants and have participated in the execution of numerous other search warrants.

3.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, witnesses, information obtained from Google, and information published by Meta Platforms, Inc.  This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## JURISDICTION

4.     This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined in 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A).  Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

5.     As set forth below, there is probable cause to believe that in the accounts described in Attachment A are the fruits, evidence, and instrumentalities of criminal offenses in violation of Title 26, United States Code, Section 7206(1) (filing false tax returns) and Section 7206(2) (aiding or assisting in the filing of false or fraudulent returns), as well as Title 18, United States Code, Section 287 (false claims) ("the Subject Offenses").

### Background

**Overview of Return Preparer Fraud Schemes**

6.     Based on my training, experience, and feedback from other experienced law enforcement officers, I am aware that:

       a.     Every person who prepares or assists in preparing federal tax returns for compensation must have a Preparer Tax Identification Number (PTIN).  PTINs are

2

renewed for every filing season and are used to track the tax preparation activities of paid return preparers.

b.      Tax return preparer fraud schemes normally involve multiple false tax returns that appear to have been prepared by the same individual.  The tax returns normally share similar tax return characteristics that establish a pattern of fraud.

c.      Tax return preparer fraud schemes often involve the electronic filing (e-filing) of false tax returns claiming false earned income amounts in order to qualify taxpayers for maximum refundable credits such as the Earned Income Tax Credit (EITC) and Credits for Sick Leave and Family Leave for Certain Self-Employed Individuals.  Often times, the unscrupulous tax return preparers will use false Schedules C, Profit or Loss From Business, to falsify the earned income amounts.  By doing this, the taxpayers receive significantly larger refunds than what they are legitimately owed.

d.      Tax return preparers often communicate with clients via email to receive information and records from them to use to prepare their tax returns.  Also, tax return preparers often use email to send clients copies of their tax returns and other information including tax preparation agreements and fee invoices.  These records can be used to show whether the documentation provided by the client matches what the return preparer reported on their tax return.

e.      Treasury Regulation section 1.6695-2 states that paid tax return preparers are required to meet certain due diligence requirements when preparing returns or claims for refund for clients claiming the EITC, child tax credit, additional child tax credit, credit for other dependents, American opportunity credit, and/or head of household filing status.  These due diligence requirements include the retention of

3

certain records for three years from the latest of the following dates:  (1) the due date of the tax return, (2) the date the tax return or claim for refund was electronically filed, (3) the date the tax return or claim for refund was presented to the taxpayer for signature if not electronically filed, or (4) if the preparer gives the tax return to another preparer to complete and sign, the date the preparer submitted it to the signing preparer.  The records to be retained for three years include: (1) a copy of the completed Form 8867, Paid Preparer's Due Diligence Checklist, (2) a copy of each completed worksheet for any credits claimed that are specified in the due diligence requirements, (3) a copy of any documents provided by the taxpayer on which the preparer relied to determine the taxpayer's eligibility for the credits and/or head of household filing status and to figure the amounts of the credits claimed, and (4) a record of how, when, and from whom the information used to prepare the Paid Preparer's Due Diligence Checklist and the applicable worksheets was obtained.

**Earned Income Tax Credit (EITC)**

7.     The EITC is a refundable tax credit for working taxpayers who have low to moderate income.  This credit will either reduce the tax owed or will generate a refund for the taxpayer.  In order to qualify for the EITC, an individual must have earned income under an allowable amount, which changes from year to year.  The amount of EITC a taxpayer receives will differ depending on their adjusted gross income (AGI), their filing status, and number of qualifying children.  The amount of EITC a taxpayer receives is based on a bell curve.  The EITC amount increases with an increase in AGI, up to a certain AGI threshold.  As AGI amounts increase above that threshold, the amount of EITC gradually decreases until it reaches the income limitations.

4

**Credits for Sick Leave and Family Leave for Certain Self-Employed Individuals**

8.      The Families First Coronavirus Response Act (FFCRA), as amended by the COVID-related Tax Relief Act of 2020, provided small and midsize employers refundable tax credits that reimbursed them, dollar-for-dollar, for the cost of providing paid sick and family leave wages to their employees for leave related to COVID-19, for the time period April 1, 2020, through March 31, 2021.  The American Rescue Plan Act of 2021 extended the period for which employers could claim these refundable tax credits to include April 1, 2021 through September 30, 2021.  The FFCRA, as amended by the COVID-related Tax Relief Act of 2020, and the American Rescue Plan Act of 2021 extended to self-employed individuals equivalent refundable tax credits against net income.  As a result, certain self-employed individuals who were unable to perform their services because they took leave for certain COVID-19 related issues, were eligible to claim these refundable tax credits on Form 7202, Credits for Sick Leave and Family Leave for Certain Self-Employed Individuals, for 2020 and 2021.  Forms 7202 were attached to Form 1040, US Individual Income Tax Return, and filed with the IRS.

9.      The amount of the Credit for Sick Leave and Family Leave for Certain Self-Employed Individuals was calculated based on the number of days of leave taken for certain COVID-19 related issues, multiplied by the average daily self-employed income of the individual. The amount of this refundable credit increased with an increase in both the number of days of leave taken and the amount of self-employed income up to a certain maximum amount.

**Background of the Investigation and Tax Return Patterns**

10.      I am currently investigating allegations that Jahnell Easly (Easly) and Jasmeika Simon (Simon), tax return preparers for Unlimited Taxes & More (UTM) in Milwaukee, Wisconsin, aided or assisted taxpayers by preparing and filing false federal tax returns with the

IRS during the 2022 and 2023 filing seasons.  The returns Easly and Simon prepared and filed were for the 2020 through 2022 tax years.  These tax returns allegedly reported false Schedule C income and losses, false household employee wages, false sick and family leave credits, and false child and dependent care expenses, among other false items.

11.     This investigation began in January 2023 after I received a return preparer fraud scheme referral from the Northern Area Scheme Development Center of the IRS.  This referral included an analysis of 2020 and 2021 Forms 1040, US Individual Income Tax Returns, filed with the IRS that list Easly or Simon as the return preparer with their assigned PTINs.  The analysis shows that these returns display suspiciously high rates of refunds, Schedule C profits and losses, EITC, credits for child and dependent care, and credits for sick leave and family leave.

12.     After receiving the referral from the Northern Area Scheme Development Center of the IRS, I conducted my own analysis of all 2020 through 2022 Form 1040 tax returns filed with the IRS that list Easly or Simon as the return preparer based on their assigned PTINs.  As of April 12, 2023, IRS records showed that 702 Form 1040 tax returns listing Easly or Simon as the paid return preparer had been filed with the IRS for the 2020 through 2022 tax years.  99.9% of the tax returns claimed refunds totaling $11,603,448.  The tax returns linked to Easly and Simon as the return preparer list their preparer firm name as UTM.  The tax return statistics for the Form 1040 tax returns linked to Easly and Simon were compared to national, state, and local statistics of filed tax returns and are summarized in the tables below:

| Form 1040 Tax Returns Claiming Refunds | | | |
|---|---|---|---|
| | | | |
| Particulars | 2020 | 2021 | 2022 |
| United States | 75.4% | 71.7% | 70.5% |
| State of Wisconsin | 76.0% | 71.4% | 69.5% |
| City of Milwaukee | 79.7% | 76.3% | 73.5% |
| **Jahnell Easly** | **100.0%** | **100.0%** | **100.0%** |
| **Jasmeika Simon** | **100.0%** | **99.5%** | **100.0%** |

| Average Refund Amount Claimed on Form 1040 Tax Returns | | | |
|---|---|---|---|
| | | | |
| Particulars | 2020 | 2021 | 2022 |
| United States | $ 2,393.85 | $ 2,519.72 | $ 2,088.07 |
| State of Wisconsin | $ 2,097.06 | $ 2,101.09 | $ 1,786.56 |
| City of Milwaukee | $ 2,341.90 | $ 2,691.72 | $ 2,092.26 |
| **Jahnell Easly** | **$ 12,052.35** | **$ 19,653.02** | **$ 7,391.67** |
| **Jasmeika Simon** | **$ 11,555.00** | **$ 20,106.99** | **$ 9,425.88** |

| Form 1040 Tax Returns Claiming Schedule C Profit or Loss | | | |
|---|---|---|---|
| | | | |
| Particulars | 2020 | 2021 | 2022 |
| United States | 16.7% | 17.8% | 17.0% |
| State of Wisconsin | 11.9% | 12.8% | 12.0% |
| City of Milwaukee | 11.9% | 13.7% | 13.3% |
| **Jahnell Easly** | **94.1%** | **95.0%** | **56.9%** |
| **Jasmeika Simon** | **100.0%** | **84.7%** | **40.0%** |

| Form 1040 Tax Returns Claiming EITC | | | |
|---|---|---|---|
| **Particulars** | **2020** | **2021** | **2022** |
| United States | 15.5% | 20.2% | 15.4% |
| State of Wisconsin | 11.9% | 16.0% | 10.7% |
| City of Milwaukee | 20.8% | 26.5% | 20.1% |
| **Jahnell Easly** | **70.6%** | **90.6%** | **78.4%** |
| **Jasmeika Simon** | **77.8%** | **88.4%** | **97.5%** |

| Form 1040 Tax Returns Claiming Sick and Family Leave Credits | | |
|---|---|---|
| **Particulars** | **2020** | **2021** |
| United States | 0.7% | 0.7% |
| State of Wisconsin | 0.3% | 0.3% |
| City of Milwaukee | 0.5% | 1.4% |
| **Jahnell Easly** | **94.1%** | **97.5%** |
| **Jasmeika Simon** | **100.0%** | **94.4%** |

| Form 1040 Tax Returns Claiming Child and Dependent Care Credits | |
|---|---|
| **Particulars** | **2021** |
| United States | 0.3% |
| State of Wisconsin | 0.3% |
| City of Milwaukee | 0.2% |
| **Jahnell Easly** | **17.6%** |
| **Jasmeika Simon** | **48.6%** |

13.     The statistical comparisons in paragraph 12 show that tax returns prepared and filed by Easly and Simon have suspicious, high rates of tax refunds, Schedule C profits and losses, household employee wages, EITC, credits for child and dependent care, and credits for sick leave

and family leave. The tax returns prepared by Easly and Simon also have suspiciously high average refund amounts. Based on my training and experience, these patterns are indicators of fraudulent tax return filings.

14.     A sampling of Form 1040 tax returns prepared and filed with the IRS by Easly and Simon shows significant discrepancies. Based on my training and experience, the following discrepancies are possible indicators of fraudulent tax returns filed to obtain larger tax refunds than legitimately owed to the taxpayers:

a.      On February 27, 2022, a 2021 Form 1040 tax return was e-filed with the IRS in the name of a taxpayer with initials M.J. This tax return lists Easly as the paid tax preparer with her assigned PTIN. The refund amount on this tax return is $30,063. There is a Form 2441, Child and Dependent Care Expenses, attached to this tax return that lists Easly as the care provider for M.J.'s four qualifying dependents and shows that Easly was paid $15,680 for her services. This resulted in a refundable tax credit of $7,840. In contrast, Easly did not report any income as a childcare provider on her own 2021 Form 1040 tax return. This same tax return reported a Schedule C, Profit or Loss From Business, listing M.J. as the owner of an "Apparel Mfg" business. The Schedule C claimed a loss of $6,390 based on a single line entry for supplies expenses of $6,390. There was no other self-employment income reported on the tax return. In contrast, the Form 7202, Credits for Sick Leave and Family Leave for Certain Self-Employed Individuals, reported $17,550 of net earnings from self-employment for calculating the refundable credit.

b.      On April 18, 2022, a 2021 Form 1040 tax return was e-filed with the IRS in the name of a taxpayer with initials C.G. This tax return lists Simon as the paid tax

9

preparer with her assigned PTIN. The refund amount on this tax return is $25,280. This tax return reported a Schedule C, Profit or Loss From Business, listing C.G. as the owner of a "Beauty Salons" business. The Schedule C claimed a profit of $18,600. There was no other self-employment income reported on the tax return. In contrast, the Form 7202, Credits for Sick Leave and Family Leave for Certain Self-Employed Individuals, reported $41,677 of net earnings from self-employment for calculating the refundable credit.

**Jahnell Easly's Form 1040 Tax Returns**

15.     Easly self-prepared and filed personal 2021 and 2022 Form 1040 tax returns with the IRS that display significant discrepancies. Based on my training and experience, the following discrepancies are possible indicators of fraudulent tax returns filed by Easly to falsely increase her tax refunds:

      a.     On January 30, 2022, Easly e-filed a self-prepared, personal 2021 Form 1040 tax return with the IRS. Easly listed her email address on the return as jahnelleasly01@gmail.com. Easly reported a tax refund of $4,370 on this return. This return reported a Schedule C self-employment loss of $5,020 for a credit repair business named Nells Business Services. There was no other self-employment income reported on the tax return. In contrast, the attached Form 7202, Credits for Sick Leave and Family Leave for Certain Self-Employed Individuals, reported $29,500 of net earnings from self-employment for calculating a $2,260 refundable credit for sick leave.

      b.     On April 26, 2023, Easly e-filed a 2021 Form 1040X, Amended US Individual Tax Return, with the IRS. Easly is listed as the paid preparer on the return. Easly reported a tax refund of $16,150 on the return. This return amended multiple

items, including the Schedule C and Form 7202. The Schedule C self-employment loss of $5,020 for Nells Business Services was amended to show a profit of $2,430. The Form 7202 was amended to include the addition of a family leave credit and the net earnings from self-employment was increased from $29,500 to $56,744, which is conflicting with the Schedule C self-employment profit of $2,430. This resulted in a significant increase to the Form 7202 credits and the tax refund.

       c.       On April 4, 2023, Easly e-filed a self-prepared, personal 2022 Form 1040 tax return with the IRS. Easly reported a tax refund of $9,250 on the return. The only income reported on the return was a Schedule C self-employment profit of $20,213 from a tax preparation business named J&J Taxes and More Credit Repair. The Schedule C reported sales of $28,567, $6,000 of rent, and $2,354 of supplies. In contrast, IRS records show that Easly was issued a 2022 Form 1099-NEC, Nonemployee Compensation, from Unlimited Taxes and More Inc for $229,117 of taxable nonemployee compensation and a Form 1099-NEC from Unlimited Taxes and More Franchising for $14,352 of taxable nonemployee compensation. These Forms 1099-NEC or the taxable amounts were not reported anywhere on Easly's 2022 Form 1040. Additionally, the return reported a $12,574 refundable fuel tax credit, claimed on Form 4136, Credit for Federal Tax Paid on Fuels. Easly reported the nontaxable use of 58,762 gallons of gasoline for off-highway business use and 9,952 gallons of gasoline for use on a farm for farming purposes on the Form 4136. Based on the U.S. Energy Information Administration (EIA) website, www.eia.gov, the average price of a gallon of gasoline, which includes all grades of gasoline, was $4.059 in 2022. Using this average, the 68,714 gallons of gasoline that Easly claimed to have purchased and

11

used would have cost $278,910.  In contrast, she only reported $28,567 of sales for the

year.  Also, there is no Schedule F, Profit or Loss From Farming, claimed on the return

or any farming related activity reported elsewhere on the return to support Easly's claim

that she used 13,591 gallons of gasoline for use on a farm for farming purposes.  Based

on this, I believe Easly falsely inflated the number of gallons of gasoline she claimed

on this Form 4136 to increase her tax refund.

**Jasmeika Simon's Form 1040 Tax Returns**

16.     Simon self-prepared and filed personal 2021 and 2022 Form 1040 tax returns with

the IRS that display significant discrepancies.  Based on my training and experience, the following

discrepancies are possible indicators of fraudulent tax returns filed by Simon to falsely increase

her tax refunds:

        a.      On January 21, 2022, Simon e-filed a personal 2021 Form 1040 tax return

        with the IRS.  Simon listed her email address on the return as

        simonjasmeika@gmail.com.  Simon is listed as the paid preparer on the return.  Simon

        reported a tax refund of $18,198 on the return.  The only income reported on the return

        was $10,500 of household help wages.  There was no self-employment income

        reported.  In contrast, Simon attached a Form 7202, Credits for Sick Leave and Family

        Leave for Certain Self-Employed Individuals, reporting $20,500 of net earnings from

        self-employment for calculating $4,230 of refundable credits for sick and family leave.

        Additionally, Simon reported $7,980 of child and dependent care expenses for a

        refundable credit of $3,990.  The child and dependent care expenses Simon reported

        represent 76% of her total income reported on this tax return.  This would have left

        Simon and her dependent with only $2,520 for basic living expenses.  Based on this

discrepancy and my analysis of suspicious child and dependent care credits Simon reported on her clients' tax returns, I believe Simon's child and dependent care credit claim was falsely inflated to increase Simon's tax refund.

b.    On April 17, 2023, Simon e-filed a self-prepared, personal 2022 Form 1040 tax return with the IRS.  Simon listed her email address on the return as simonjasmeika@gmail.com.  Simon reported a tax refund of $10,249 on the return. The only income reported on this return was a Schedule C self-employment profit of $21,213 from a general freight business named High Speed Logistics MKE LLC.  The Schedule C reported sales of $29,567, $6,000 of rent, and $2,354 of supplies.  In contrast, IRS records show that Simon was issued a 2022 Form 1099-NEC, Nonemployee Compensation, from Unlimited Taxes and More Inc for $208,950 of taxable nonemployee compensation and a Form 1099-NEC from Unlimited Taxes and More Franchising for $35,400 of taxable nonemployee compensation.  These Forms 1099-NEC were not reported anywhere on Simon's 2022 Form 1040.  Additionally, this return reported a $13,789 refundable fuel tax credit, claimed on Form 4136, Credit for Federal Tax Paid on Fuels.  Simon reported the nontaxable use of 61,762 gallons of gasoline for off-highway business use and 13,591 gallons of gasoline for use on a farm for farming purposes on the Form 4136.  As discussed in paragraph 15(c) above, based on the average price of a gallon of gasoline in 2022 per EIA, the 75,353 gallons of gasoline that Simon claimed to have purchased and used would have cost $305,857.  In contrast, she only reported $29,567 of sales. Also, there is no Schedule F, Profit or Loss From Farming, claimed on the return or any farming related activity reported elsewhere on the return to support Simon's claim that she used 13,591 gallons of gasoline for use

13

on a farm for farming purposes. Based on this, I believe Simon falsely inflated the number of gallons of gasoline she claimed on this Form 4136 to increase her tax refund.

**Undercover Operation**

17. On March 7, 2023, an Internal Revenue Service, Criminal Investigation Undercover Agent (UCA) went to UTM located at 8247 W Brown Deer Road, Milwaukee, Wisconsin 53223, in an undercover capacity, to have a federal income tax return prepared by Easly. This meeting was scheduled between Easly and the UCA; however, when the UCA arrived at UTM, the doors were locked and the lights were off. The UCA subsequently called Easly at phone number 262-888-2951 and spoke to her. Easly told the UCA that she forgot about the meeting. During the phone call, they arranged for Easly to prepare the UCA's tax return remotely. Easly told the UCA she would text and email a virtual link to the UCA to upload personal and tax information for Easly to use to prepare the tax return.

18. On March 7, 2023, Easly text messaged the UCA the following link: https://www.cognitoforms.com/UTM6/TaxClientIntakeForm. This is the same link that was displayed in the "Intro" section of Easly's Facebook account when I conducted surveillance on January 13, 2023. Easly emailed the link to the UCA from email address, jahnelleasly01@gmail.com and carbon copied jeasly@unlimitedtaxestx.com. The UCA subsequently navigated to the Tax Client Intake Form via the link and was taken to the following screen:

14



19.    After navigating to the Tax Client Intake Form, the UCA entered the following information and submitted it:

    a.   The UCA's name, phone number, email address, social security number, date of birth, and occupation.

    b.   The UCA uploaded a photocopy of the UCA's driver's license and social security card.

    c.   The names, dates of birth, social security numbers, and relationships for two dependent children.

    d.   The UCA uploaded a photocopy of the UCA's 2022 Form W-2, Wage and Tax Statement.  This Form W-2 lists Box 1 wages of $1,144 and Box 2 federal income tax withheld of $0.

15

e.  The UCA signed the following:  (1) I certify I would like to have my tax return prepared in accordance with the information I have provided, (2) Consent to Use of Tax Return Information, and (3) Consent to Disclosure of Tax Return Information.

20.  If a 2022 Form 1040 was prepared accurately based on the information entered into the Tax Client Intake Form by the UCA, it would have produced a federal tax refund of $450.

21.  On March 8, 2023, at approximately 2:41 PM, Easly text messaged the UCA, asking for proof of the UCA's kids.  On March 9, 2023, at approximately 12:15 AM, the UCA responded to Easly by texting a photocopy of the social security cards for both of the UCA's dependents.

22.  On March 9, 2023, at approximately 1:00 PM, Easly called the UCA.  This phone call was consensually recorded by the UCA.  I have personally listened to the recording of this phone call.  The following exchange occurred during the phone call:

**EASLY:** So I can give you two alternatives.

**UCA:** Mm-hmm.

**EASLY:** We can use the- we can use the tax form, the-the W2 that you have, which is not ultimately giving you nothing for the children that you're filing.

**UCA:** Mm-hmm.

**EASLY:** Or I can add like a self-employment on there like you did hair or anything of that nature on there, and you pretty much can go about it that route and have employment on there.

16

**UCA:** Okay. Well, [coughs] oh, I'm sorry. I got real sick last night and this morning, but um, I-- whichever way, 'cause they told me you were good at whatever you did, so I'm just-- I'm fine with however you do it. Yes--

**EASLY:** Okay. So I'm gonna let you know what--

**UCA:** Mm-hmm.

**EASLY:** I'm gonna put you as like a hairstylist or something. Um, I'm gonna let you know the numbers. I just wanted to get your permission to do so-

**UCA:** Uh-huh.

**EASLY:** -before I do it because some people (unintelligible) they stuff done regularly. Whatever they get back, they get back. But I just wanna always give you that option, you know.

23.     On March 10, 2023, Easly emailed the UCA a copy of the UCA's 2022 Form 1040 and supporting files from email address jeasly@unlimitedtaxestx.com.  This tax return was compared to the 2022 Form 1040 filed with the IRS in the UCA's identity and the returns match. This tax return reported multiple false income items that were not provided to Easly by the UCA. This tax return reported $12,153 of false household employee wages on Form 1040 line 1b and $7,593 of false profit from a Schedule C, Profit or Loss From Business, claiming the UCA operated a business as a hair braider.  By adding the false household employee wages and business income, Easly fraudulently increased the UCA's tax refund by $7,268 to $7,718.

**Facebook Accounts**

24.     As part of this investigation, I submitted an affidavit in support of an application for a search warrant for information associated with Facebook accounts kyirria (URL: www.facebook.com/kyirria) and jasmeika.shanice (URL: www.facebook.com/jasmeika.shanice). On September 6, 2023, United States Magistrate Judge Stephen C. Dries issued a search warrant in the Eastern District of Wisconsin for evidence of the crimes described in the affidavit that were believed to be located at these Facebook accounts.  On September 6, 2023, I served the search warrant on Meta Platforms, Inc. ("Meta") and received responsive records on September 21, 2023. The records I received include basic subscriber information, IP address logs, messages, photos, transactional information, videos, and other content.    The following paragraphs discuss basic subscriber information and communications involving these Facebook accounts.  I believe these records show probable cause that the email accounts described in Attachment A contain the fruits, evidence, and instrumentalities of criminal offenses committed by Easly and Simon in violation of the Subject Offenses.

25.     Facebook account kyirria was created on September 12, 2009 and was deactivated on August 17, 2023.   The account was registered in the name of Jahnell Easly and jahnelleasly01@gmail.com was a registered email address on the account.  Facebook account jasmeika.shanice was created on August 17, 2007 and was still active on September 6, 2023.  The account is registered in the name of Jasmeika Simon and simonjasmeika@gmail.com is a registered email address on the account.

26.     The following examples show that Easly and Simon advertised and provided clients with the email accounts in Attachment A as a means to communicate with them regarding their tax preparation services:

a.      On January 25, 2022, LaSheral Brooks Nance, one of the national team leaders at UTM, messaged Easly the following, "Hey love send me you business address email and phone number you want on the marketing."  Easly responded, JahnellEasly01@gmail.com (414) 998-7342 6107 N Teutonia Milwaukee, WI 53209.

b.      On February 10, 2022, an individual with initials D.C. messaged Simon the following, "I wanted to get my taxes."  On February 14, 2022, after some back and forth messages to setup an appointment, Simon messaged D.C. the following, "Ok whenever you ready you can email me your documents and we can do face time. Is it ok to call on here or do you want to call through the phone? My email is simonjasmeika@gmail.com."

c.      On December 13, 2022, an individual with initials S.B. messaged Easly the following, "Poodie do you still got tax return from last year."  Easly responded, "Yeah" and "Check yo email jahnelleasly01@gmail.com."   Based on my training and experience, I believe this to mean that Easly emailed S.B. a copy of S.B.'s 2021 tax return[1] from jahnelleasly01@gmail.com.

d.      On January 9, 2023, Easly posted the following to her Facebook account, "CREDITS that was available LAST YEAR is Not Available this Tax season So please be mindful of that … ✅ I will be doing my very best to get YOU the refund you deserve! There's Advances Up To $9,500 Schedule your appointments now! P.S. Be sure to have all your documents 💚 Click the link below https://www.cognitoforms.com/UTM6/TaxClientIntakeForm

---

[1] IRS records show that a 2021 Form 1040 tax return was e-filed with the IRS in the name of S.B. that lists Easly as the paid return preparer.  S.B.'s e-filed 2021 Form 1040 tax return reported a refund of $16,455 and has the same refund fraud indicators associated with other returns Easly prepared as detailed in this affidavit.

19

📍@[100084305101264:2048:Unlimited Taxes & More - Milwaukee] Email Jeasly@unlimitedtaxestx.com Phone 262-888-2951 Or Inbox #taxseason #2023taxseason #Unlimitedtaxes #taxpreparer #smallbusiness."

e.     On February 17, 2023, Simon messaged an individual with initials M.H. the following, "Hello, I'm working on your return now.. you didn't upload your w/2s to the form can you email all 7 of them over to my email to so can get you a quote as soon as possible. My email is jsimon@unlimitedtaxestx.com."

27.     Based on my training and experience, the following communications that Easly and Simon had with their tax clients are evidence that they prepared fraudulent client tax returns in order to falsely increase tax refunds:

a.     On March 7, 2022, an individual with initials C.P.[2] messaged Easly the following, "Should I file even if I didn't work last year?"  In response, Easly asked, "Hey you got kids or anything?"  C.P. responded, "Yes a son."  Then, Easly responded, "Yesss file !!" and "Girl I can get you some money!!"[3]

b.     On February 27, 2023, Easly messaged an individual with initials N.J. the following, "I had to add some self employment cuz like last year because you didn't make enough."[4]

---

[2] A review of Easly's Facebook communications with C.P. shows that C.P. is an alias for the individual with initials B.G.
[3] IRS records show on March 9, 2022, a 2021 Form 1040 tax return was e-filed with the IRS in the name of B.G. that lists Easly as the paid return preparer.  B.G.'s e-filed 2021 Form 1040 tax return reported self-employment income of $13,275, and a refund of $15,217.  This return has the same refund fraud indicators associated with other returns Easly prepared as detailed in this affidavit.
[4] IRS records show on February 27, 2023, a 2022 Form 1040 tax return was e-filed with the IRS in the name of N.J. that lists Easly as the paid return preparer.  N.J.'s e-filed 2022 Form 1040 tax return reported household employee wages of $7,653, self-employment income of $3,811, and a refund of $9,077.  This return has the same refund fraud indicators associated with other returns Easly prepared, including the UCA's return, as detailed in this affidavit.

20

c.     On April 25, 2023, Simon messaged an individual with initials T.J. the following, "Ok I'm finna have your quote in like 15 mins. I'm using fuel credits on your return so it'll boost your refund high.. they definitely hitting."[5]

d.     On May 1, 2023, an individual with initials A.K.E. messaged Simon the following, "Shit I didn't think u can file if u didn't have a job. Plus I don't have a dependent either. Lol. I wouldn't even know what to file. Lmao." Simon responded, "I'm telling you that don't matter" and "Self employment imma create your income." Later, Simon messaged A.K.E. the following, "I was getting people last year with no kids no income 30k."

**Google, LLC Records**

28.     On August 23, 2023, I received email account records from Google. I have reviewed these records, which show the following:

a.     On June 17, 2022, email account Jsimon@unlimitedtaxestx.com was created in the name of Jasmeika Simon. The last login to Jsimon@unlimitedtaxestx.com was on July 30, 2023. Jsimon@unlimitedtaxestx.com has the following services: Dasher Policy, Ga Plus, Google Apps Administrator Control Panel, Gmail, Google Groups, Google Hangouts, Google Chat, Google Calendar, Google Docs, Google Drive, Google Sites, Google Voice, Contacts, Google Chrome Sync, Google Vault, Apps Script, Topaz, Classroom, Google Keep, Jamboard Web and Mobile Apps, Google Tasks Service, Course Kit, Meet, and Pikeplace User.

---

[5] IRS records show on May 15, 2023, a 2022 Form 1040 was e-filed with the IRS in the name of T.J. that does not list any tax return preparer. T.J.'s e-filed 2022 Form 1040 reported a fuel tax credit of $18,941 and a refund of $23,776.

b.      On June 17, 2022, email account jeasly@unlimitedtaxestx.com was created in the name of Jahnell Easly.   The last login to jeasly@unlimitedtaxestx.com was on May 19, 2023.   Jeasly@unlimitedtaxestx.com has the following services: Dasher Policy, Ga Plus, Google Apps Administrator Control Panel, Gmail, Google Groups, Google Hangouts, Google Chat, Google Calendar, Google Docs, Google Drive, Google Sites, Google Voice, Contacts, Google Chrome Sync, Google Vault, Apps Script, Topaz, Classroom, Google Keep, Jamboard Web and Mobile Apps, Google Tasks Service, Course Kit, Meet, YouTube, and Pikeplace User.

c.      On August 20, 2014, email account jahnelleasly01@gmail.com was created in the name of Jahnell Easly.  The last login to jahnelleasly01@gmail.com was on August 8, 2023.   Jahnelleasly01@gmail.com has the following services: Gmail, Android, Google Calendar, Google Photos, Google Hangouts, Location History, YouTube, Google Chrome Sync, Google Cloud Print, Google Maps Engine, Google Payments, Google My Maps, Web & App Activity, Google Play Music, Google Maps, Chromeos Login, and Google Chat.

d.      On January 10, 2017, email account simonjasmeika@gmail.com was created in the name of Jasmeika Simon.  The last login to simonjasmeika@gmail.com was on July 18, 2023.  Simonjasmeika@gmail.com has the following services: Web & App Activity, Gmail, Google Calendar, YouTube, Google Hangouts, Google My Maps, Location History, Android, Google Voice, Google Chat, Chromeos Login, Google Payments, Has Madison Account, and Google Ads.

e.      On September 28, 2023, I issued a preservation request letter to Google pursuant to Title 18 USC § 2703(f) via Google's Law Enforcement Request System.

22

This was a request for Google to preserve certain records and information relating to jahnelleasly01@gmail.com and simonjasmeika@gmail.com. On September 28, 2023, Google acknowledged receipt of my preservation request and issued reference number 43694827 to the request.

## BACKGROUND CONCERNING GOOGLE[6]

29.     Google is a United States company that offers to the public through its Google Accounts a variety of online services, including email, cloud storage, digital payments, and productivity applications, which can be accessed through a web browser or mobile applications. Google also offers to anyone, whether or not they have a Google Account, a free web browser called Google Chrome, a free search engine called Google Search, a free video streaming site called YouTube, a free mapping service called Google Maps, and a free traffic tracking service called Waze. Many of these free services offer additional functionality if the user signs into their Google Account.

30.     In addition, Google offers an operating system ("OS") for mobile devices, including cellular phones, known as Android. Google also sells devices, including laptops, mobile phones, tablets, smart speakers, security cameras, and wireless routers. Users of Android and Google devices are prompted to connect their device to a Google Account when they first turn on the device, and a Google Account is required for certain functionalities on these devices.

31.     Signing up for a Google Account automatically generates an email address at the domain gmail.com. That email address will be the log-in username for access to the Google Account. Enterprises, such as businesses and educational institutions, may also establish Google

---

[6] The information in this section is based on information published by Google on its public websites, including, but not limited to, the following webpages: the "Google legal policy and products" page available to registered law enforcement at lers.google.com; product pages on support.google.com; or product pages on about.google.com.

Accounts that can be accessed using an email address at the enterprise's domain (e.g. employee@company.com).

32.     Google advertises its services as "One Account. All of Google working for you." Once logged into a Google Account, a user can connect to Google's full suite of services offered to the general public, described in further detail below. In addition, Google keeps certain records indicating ownership and usage of the Google Account across services, described further after the description of services below.

33.     Google provides email services (called Gmail) to Google Accounts through email addresses at gmail.com or enterprise email addresses hosted by Google. Gmail can be accessed through a web browser or a mobile application. Additional email addresses ("recovery," "secondary," "forwarding," or "alternate" email addresses) can be associated with the Google Account by the user. Google preserves emails associated with a Google Account indefinitely, unless the user deletes them.

34.     Google provides an address book for Google Accounts through Google Contacts. Google Contacts stores contacts the user affirmatively adds to the address book, as well as contacts the user has interacted with in Google products. Google Contacts can store up to 25,000 contacts. Users can send messages to more than one contact at a time by manually creating a group within Google Contacts or communicate with an email distribution list called a Google Group. Users have the option to sync their Android mobile phone or device address book with their account so it is stored in Google Contacts. Google preserves contacts indefinitely, unless the user deletes them. Contacts can be accessed from the same browser window as other Google products like Gmail and Calendar.

35.     Google provides an appointment book for Google Accounts through Google Calendar, which can be accessed through a browser or mobile application. Users can create events or RSVP to events created by others in Google Calendar. Google Calendar can be set to generate reminder emails or alarms about events or tasks, repeat events at specified intervals, track RSVPs, and auto-schedule appointments to complete periodic goals. A single Google Account can set up multiple calendars. An entire calendar can be shared with other Google Accounts by the user or made public so anyone can access it. Users have the option to sync their mobile phone or device calendar so it is stored in Google Calendar. Google preserves appointments indefinitely, unless the user deletes them. Calendar can be accessed from the same browser window as other Google products like Gmail and Calendar.

36.     Google provides several messaging services including Duo, Messages, Hangouts, Meet, and Chat. These services enable real-time text, voice, and/or video communications through browsers and mobile applications, and also allow users to send and receive text messages, videos, photos, locations, links, and contacts. Google may retain a user's messages if the user hasn't disabled that feature or deleted the messages, though other factors may also impact retention. Google does not retain Duo voice calls, though it may retain video or voicemail messages.

37.     Google Drive is a cloud storage service automatically created for each Google Account. Users can store an unlimited number of documents created by Google productivity applications like Google Docs (Google's word processor), Google Sheets (Google's spreadsheet program), Google Forms (Google's web form service), and Google Slides, (Google's presentation program). Users can also upload files to Google Drive, including photos, videos, PDFs, and text documents, until they hit the storage limit. Users can set up their personal computer or mobile phone to automatically back up files to their Google Drive Account. Each user gets 15 gigabytes

of space for free on servers controlled by Google and may purchase more through a subscription plan called Google One. In addition, Google Drive allows users to share their stored files and documents with up to 100 people and grant those with access the ability to edit or comment. Google maintains a record of who made changes when to documents edited in Google productivity applications. Documents shared with a user are saved in their Google Drive in a folder called "Shared with me." Google preserves files stored in Google Drive indefinitely, unless the user deletes them.

38.     Google Keep is a cloud-based notetaking service that lets users take notes and share them with other Google users to view, edit, or comment. Google Keep notes are stored indefinitely, unless the user deletes them.

39.     Google offers a cloud-based photo and video storage service called Google Photos. Users can share or receive photos and videos with others. Google Photos can be trained to recognize individuals, places, and objects in photos and videos and automatically tag them for easy retrieval via a search bar. Users have the option to sync their mobile phone or device photos to Google Photos. Google preserves files stored in Google Photos indefinitely, unless the user deletes them.

40.     Google offers a service called Google Voice through which a Google Account can be assigned a telephone number that can be used to make, record, and forward phone calls and send, receive, store, and forward SMS and MMS messages from a web browser, mobile phone, or landline. Google Voice also includes a voicemail service. Records are stored indefinitely, unless the user deletes them.

41.     Google integrates its various services to make it easier for Google Accounts to access the full Google suite of services. For example, users accessing their Google Account

through their browser can toggle between Google Services via a toolbar displayed on the top of most Google service pages, including Gmail and Drive. Google Hangout, Meet, and Chat conversations pop up within the same browser window as Gmail. Attachments in Gmail are displayed with a button that allows the user to save the attachment directly to Google Drive. If someone shares a document with a Google Account user in Google Docs, the contact information for that individual will be saved in the user's Google Contacts. And if a user logs into their Google Account on the Chrome browser, their subsequent Chrome browser and Google Search activity is associated with that Google Account, depending on user settings.

42.     When individuals register with Google for a Google Account, Google asks users to provide certain personal identifying information, including the user's full name, telephone number, birthday, and gender. If a user is paying for services, the user must also provide a physical address and means and source of payment.

43.     Google typically retains and can provide certain transactional information about the creation and use of each account on its system. Google captures the date on which the account was created, the length of service, log-in times and durations, the types of services utilized by the Google Account, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via Google's website or using a mobile application), details about the devices used to access the account, and other log files that reflect usage of the account. In addition, Google keeps records of the Internet Protocol ("IP") addresses used to register the account and accept Google's terms of service, as well as the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the Google Account.

44.     Google maintains the communications, files, and associated records for each service used by a Google Account on servers under its control. Even after a user deletes a communication or file from their Google Account, it may continue to be available on Google's servers for a certain period of time.

45.     Google collects and retains data about the location at which Google Account services are accessed from any mobile device, as well as the periodic location of Android devices while they are in use. This location data can derive from a range of sources, including GPS data, Wi-Fi access points, cell-site locations, geolocation of IP addresses, sensor data, user searches, and Bluetooth beacons within range of the device. According to Google, this location data may be associated with the Google Account signed-in or registered to the device when Location Services are activated on the device and the user has enabled certain global settings for their Google Account, such as Location History or Web & App Activity tracking.  The data retained may be both precision location data, like latitude and longitude coordinates derived from GPS, and inferential location data, such as the inference that a Google Account is in New York because it conducts a series of searches about places to eat in New York and directions from one New York location to another. Precision location data is typically stored by Google in an account's Location History and is assigned a latitude-longitude coordinate with a meter radius margin of error. Inferential data is stored with an account's Web & App Activity. Google maintains these records indefinitely for accounts created before June 2020, unless the user deletes it or opts to automatically delete their Location History and Web & App Activity after three or eighteen months. Accounts created after June 2020 auto-delete Location History after eighteen months unless the user affirmatively changes the retention setting to indefinite retention or auto-deletion at three months.

28

46.     In my training and experience, evidence of who was using a Google account and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above.  This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion.

47.     Based on my training and experience, messages, emails, voicemails, photos, videos, documents, and internet searches are often created and used in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation.  Thus, stored communications and files connected to a Google Account may provide direct evidence of the offenses under investigation.

48.     In addition, the user's account activity, logs, stored electronic communications, and other data retained by Google can indicate who has used or controlled the account.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  For example, subscriber information, email and messaging logs, documents, and photos and videos (and the data associated with the foregoing, such as geo-location, date and time) may be evidence of who used or controlled the account at a relevant time.  As an example, because every device has unique hardware and software identifiers, and because every device that connects to the Internet must use an IP address, IP address and device identifier information can help to identify which computers or other devices were used to access the account.  Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crime under investigation.

49.     Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation.  For example, information on the account

may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

50.     Other information connected to the use of a Google account may lead to the discovery of additional evidence. For example, the apps downloaded from the Google Play store may reveal services used in furtherance of the crimes under investigation or services used to communicate with co-conspirators. In addition, emails, instant messages, Internet activity, documents, and contact and calendar information can lead to the identification of co-conspirators and instrumentalities of the crimes under investigation.

51.     Therefore, Google's servers are likely to contain stored electronic communications and information concerning subscribers and their use of Google services. In my training and experience, such information may constitute evidence of the crimes under investigation including information that can be used to identify the account's user or users.

## CONCLUSION

52.     Based on the foregoing, I request that the Court issue the proposed search warrant.

53.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The government will execute this warrant by serving it on Google. Because the warrant will be served on Google, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with the following accounts, which are stored at premises owned, maintained, controlled, or operated by Google, LLC, a company headquartered at 1600 Amphitheatre Parkway, Mountain View, CA 94043:

1. **Jeasly@unlimitedtaxestx.com**

2. **Jsimon@unlimitedtaxestx.com**

3. **Jahnelleasly01@gmail.com**

4. **Simonjasmeika@gmail.com**

**ATTACHMENT B**

**Particular Things to be Seized**

I.     **Information to be disclosed by Google, LLC ("Google")**

To the extent that the information described in Attachment A is within the possession, custody, or control of Google, regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Google, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Google is required to disclose the following information to the government for each account or identifier listed in Attachment A **for the time period of January 1, 2022, through the date of this warrant.**

> a.     The contents of all emails associated with the accounts, including stored or preserved copies of emails sent to and from the account, draft emails, and deleted emails; attachments; the source and destination addresses associated with each email, the size, length, and timestamp of each email; and true and accurate header information including the actual IP addresses of the sender and recipients of the emails;
>
> b.     All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative email addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);
>
> c.     The types of service utilized;

d. Any records pertaining to the user's contacts, including: address books; contact lists; social network links; groups, including Google Groups to which the user belongs or communicates with; user settings; and all associated logs and change history;

e. Any records pertaining to the user's calendar(s), including: Google Calendar events; Google Tasks; reminders; appointments; invites; and goals; the sender and recipients of any event invitation, reminder, appointment, or task; user settings; and all associated logs and change history;

f. The contents of all text, audio, and video messages associated with the account, including Chat, Duo, Hangouts, Meet, and Messages (including SMS, MMS, and RCS), in any format and however initially transmitted, including, but not limited to: stored, deleted, and draft messages, including attachments and links; the source and destination addresses associated with each communication, including IP addresses; the size, length, and timestamp of each communication; user settings; and all associated logs, including access logs and change history;

g. The contents of all records associated with the account in Google Drive (including Docs, Sheets, Forms, and Slides) and Google Keep, including: files, folders, media, notes and note titles, lists, and other data uploaded, created, stored, or shared with the account including drafts and deleted records; SMS data and device backups; the creation and change history of each record; accounts with access to or which previously accessed each record; any location, device, other Google service (such as Google Classroom or Google Group), or third-party application associated with each record; and all associated logs, including access logs and IP addresses, of each record;

33

Case 2:23-mj-01833-NJ    Filed 10/23/23    Page 42 of 45    Document 1

h.      The contents of all media associated with the account in Google Photos, including: photos, GIFs, videos, animations, collages, icons, or other data uploaded, created, stored, or shared with the account, including drafts and deleted records; accounts with access to or which previously accessed each record; any location, device, or third-party application data associated with each record; and all associated logs of each record, including the creation and change history, access logs, and IP addresses;

i.      All Location History and Web & App Activity indicating the location at which the account was active, including the source of the data, date and time, latitude and longitude, estimated accuracy, device and platform, inferences drawn from sensor data (such as whether a user was at rest, walking, biking, or in a car), and associated logs and user settings, including Timeline access logs and change and deletion history;

j.      All Google Voice records associated with the account, including: forwarding and other associated telephone numbers, connection records; call detail records; SMS and MMS messages, including draft and deleted messages; voicemails, including deleted voicemails; user settings; and all associated logs, including access logs, IP addresses, location data, timestamps, and change history;

k.      All Internet search and browsing history, and application usage history, including Web & App Activity, Voice & Audio History, Google Assistant, and Google Home, including: search queries and clicks, including transcribed or recorded voice queries and Google Assistant responses; browsing history, including application usage; bookmarks; passwords; autofill information; alerts, subscriptions, and other automated searches, including associated notifications and creation dates; user settings; and all associated logs and change history.

l. All records pertaining to communications between the Provider and any person regarding the account, including contacts with support services and records of actions taken; and

m. For all information required to be disclosed pursuant to this warrant, the physical location or locations where the information is stored.

The Provider is hereby ordered to disclose the above information to the government within 14 days of the issuance of the warrant.

**II. Information to be seized by the government**

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of Title 26, United States Code, Section 7206(1) (filing false tax returns) and Section 7206 (2) (aiding or assisting in the filing of false or fraudulent returns), as well as Title 18, United States Code, Section 287 (false claims) involving **JAHNELL EASLY and/or JASMEIKA SIMON since January 1, 2022, to the present,** including, for each email account identified in Attachment A, information pertaining to the following matters:

1. The creation, preparation, and filing of tax returns, including all preparatory steps and communications.

2. Information provided by clients and potential clients concerning tax returns.

3. Records and information pertaining to taxes, refunds, and W-2s.

4. Advertisements and/or solicitation of tax clients.

5. Personal identifiable information of taxpayers, including names, date of birth, social security numbers, and driver's licenses.

6. Proceeds and/or payments pertaining to the Subject Offenses.

35

7. Financial records, including account information, bank statements, checks, money orders, cash, ATMs, withdrawals, deposits, transfers (including wire, ACH transfers).

8. All evidence of who created, used, owned or controlled the email accounts, including, records that help reveal the identity and whereabouts of such person(s).

9. Evidence indicating how and when the email accounts were accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crimes under investigation and to the email account owners.

10. Evidence indicating the email account owners' state of mind as it relates to the crime under investigation.

11. The identity of the person(s) who communicated with the email accounts about matters relating to the above-mentioned violations, including records that help reveal their whereabouts.

This warrant authorizes a review of electronically stored information, communications, other records, and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, IRS-CI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

36